Scott A. Kamber, Esq. (pro hac vice)
Ethan Preston (pro hac vice)
KAMBER & ASSOCIATES, LLC
11 Broadway, 22nd Floor.
New York, NY. 10004
(212) 920-3072 (phone)
(212) 202-6364 (facsimile)
skamber@kolaw.com

David C. Parisi, Esq. (SBN 162248)
Suzanne Havens Beckman (SBN 188814)
PARISI & HAVENS LLP
15233 Valleyheart Drive
Sherman Oaks, California   91403
(818) 990-1299 (phone)
(818) 501-7852 (facsimile)
dcparisi@parisihavens.com
shavens@parisihavens.com

# IN THE UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA – SAN JOSE DIVISION

|  |  |
|---|---|
| In Re ATI Tech. HDCP Litigation | **Case No.: 5:06-CV-01303-JW** |
|  | **PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION** |
|  | Before Hon. James Ware |
|  | Date:      May 7, 2007 |
|  | Time:      9:00 a.m. |
|  | Courtroom:   8 |

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................................ ii

TABLE OF AUTHORITIES ........................................................................................................ iii

I.      INTRODUCTION ............................................................................................................ 1

II.     APPLICATION OF CALIFORNIA LAW TO CALIFORNIA STATUTORY
        CONSUMER AND BREACH OF WARRANTY CLAIMS IS
        CONSTITUTIONAL ........................................................................................................ 3

        A.      Application of California Law to Plaintiffs' Claims of Improper
                Design, Advertising, Distribution and Sales Are Well Within Due
                Process Restrictions Recognized in *Shutts* ........................................................ 3

                1.      *Shutts'* Due Process Analysis Sought to Insure Fundamental
                        Fairness and is Not a Loophole for Foreign Companies to
                        Escape Nationwide Class Actions, Therefore Application of
                        Ontario Law is Not Required ...................................................................... 3

                2.      Plaintiffs Can Establish Sufficient Business, Design and
                        Manufacturing Contacts to Apply California Law Under
                        *Shutts* ........................................................................................................ 5

        B.      Defendants' Gamesmanship With Respect to Their *Shutts* Arguments
                Improperly Curtailed Plaintiffs' Discovery and Violated Rule
                30(b)(6) ................................................................................................................ 8

III.    CALIFORNIA CHOICE OF LAW RULES PERMIT CLASSWIDE
        APPLICATION OF CALIFORNIA CLAIMS ................................................................ 11

        A.      The *Shutts* Analysis and a Forum State's Choice of Law Rules Are
                Distinct Issues ...................................................................................................... 11

        B.      Defendants Failed to Demonstrate That Any State's Law Other Than
                California Applies ................................................................................................ 13

                1.      There is No True Conflict Between California Law and
                        Ontario Law ............................................................................................ 16

                2.      There is No True Conflict Between California Law and The
                        Law Of Any Other State .......................................................................... 17

                3.      Even With No California Nexus, State Law Variations Are
                        Minimal, Non-Existent, or Irrelevant to the Class Claims ...................... 20

IV.     CALIFORNIA LAW DOES NOT REQUIRE INDIVIDUALIZED PROOF
        OF RELIANCE FOR PLAINTIFFS' CLAIMS .............................................................. 21

        A.      Defendants' Attempts to Distinguish *Vasquez* Are Unavailing .......................... 22

        B.      Proposition 64 Does Not Require Every Class Member to Prove
                Reliance ................................................................................................................ 23

V.      DEFENDANTS' SPOILATION / ADEQUACY ARGUMENTS ARE
        MERITLESS. ...................................................................................................................... 25

VI.     CONCLUSION ................................................................................................................ 26

**TABLE OF AUTHORITIES**

**CASES**

*Allstate Ins. Co. v. Hague*, 449 U.S. 302 (1981) ................................................................passim

*Anunziato v. eMachines, Inc.*, 402 F.Supp.2d 1133 (C.D. Cal. 2005) .......................................24

*Avery v. State Farm Mut. Auto. Ins. Co.*, 2001 Ill. App. LEXIS 249 (Ill. 2005) .......................21

*Boehner v. McDermott*, 332 F. Supp. 2d 149 (D.D.C. 2004)......................................................4

*Boeken v. Philip Morris, Inc.*, 127 Cal.App.4th 1640 (2005); ....................................................23

*Calenstolpe v. Merck & Co., Inc.*, 638 F. Supp. 901 (S.D.N.Y. 1986) ........................................7

*Californians for Disability Rights v. Mervyn's, LLC*, 39 Cal.4th 223 (2006)............................24

*Castano v. Am. Tobacco Co.*, 84 F.3d 734 (5th Cir. 1996) .........................................................13

*Cattie v. Wal-Mart Stores, Inc.*, 2007 U.S. Dist. LEXIS 19980 (S.D. Cal. 2007) .....................24

*Chamberlan v. Ford Motor Co.*, 369 F. Supp. 2d 1138 (N.D. Cal. 2005) ..................................22

*Chin v. Chrysler Corp.*, 182 F.R.D. 448 (D.N.J. 1998) ..............................................................13

*Church v. Consolidated Freightways, Inc.*, 1991 U.S. Dist. LEXIS 15419 (N.D. Cal.
    1991)............................................................................................................................5, 14

*CTS Corp. v. Dynamics Corp. of Am.*, 481 U.S. 69 (1987)...................................................7, 17

*Detoy v. City & County of San Francisco*, 196 F.R.D. 362 (N.D. Cal. 2000) .............................6

*Diamond Multimedia Sys. v. Superior Court*, 19 Cal.4th 1036 (1999)........................................6

*Downing v. Abercrombie & Fitch*, 265 F.3d 994 (9th Cir. 2001) ...............................................19

*Emergency One v. Waterous Co.*, 23 F. Supp. 2d 959 (E.D. Wis. 1998)......................................6

*Exter Shipping Ltd. v. Kilakos*, 310 F. Supp. 2d 1301 (N.D. Ga. 2004) .....................................4

Fed. R. Civ. P. 23(a) ..................................................................................16, 20, 21, 25

*Ferris, Baker Watts, Inc. v. Deutsche Bank Sec. Ltd*, 2004 U.S. Dist. LEXIS 22588
    (D. Minn. Nov. 5, 2004)...........................................................................................7

*Friends for All Children, Inc. v. Lockheed Aircraft Corp.*, 587 F. Supp. 180 (D.D.C.
    1984).......................................................................................................................20

*Gratz v. Bollinger*, 539 U.S. 244 (2003) ...................................................................24

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ................................19, 20

*Hanon v. Dataproducts Corp.*, 976 F.2d 497 (9th Cir. 1992).............................15, 25

*Hicks v. Morgan Stanley & Co.*, 2003 U.S. Dist. LEXIS 11972 (S.D.N.Y. July 16,
    2003).......................................................................................................................24

*Hubbard Manufacturing Co. v. Greeson*, 515 N.E.2d 1071 (Ind. 1987) ...................13

*In re Activision Secs. Litig.*, 1985 U.S. Dist. LEXIS 13271 (N.D. Cal. Dec. 2, 1985) ..........4, 16

*In re Air Crash Disaster at Mannheim, Germany on 9/11/82*, 769 F.2d 115 (3d Cir. 1982)..........................................................................................................................7

*In re Benedictin Litig.*, 857 F.2d 290 (6th Cir. 1988)..................................................7

*In re Bridgestone/Firestone Tires Prods. Liab. Litig.*, 288 F.3d 1012 (7th Cir. 2002)..............13

*In re Computer Memories Secs. Litig.*, 111 F.R.D. 675 (N.D. Cal. 1986)...................4, 5, 12, 16

*In re Copley Pharmaceutical, Inc.*, 161 F.R.D. 456 (D. Wyo. 1995) ...........................................20

*In re Ford Motor Co. Ignition Switch Prods. Litig.*, 174 F.R.D. 332 (D.N.J. 1997) .................13

*In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768 (3d Cir. 1995) .......................................................................................................20

*In re Lilco Sec. Litig.*, 111 F.R.D. 663 (E.D.N.Y. 1986) ............................................20

*In re Paxil Litig.*, 212 F.R.D. 539 (C.D. Cal. 2003)....................................................14

*In re Pharm. Indus. Average Wholesale Price Litig.*, 230 F.R.D. 61 (D. Mass. 2005)...............19

*In re Pizza Time Theatre Sec. Litig.*, 112 F.R.D. 15 (N.D. Cal. 1986) ..................................5, 15

*In re Prudential Ins. Co. America Sales Pac. Litig.*, 148 F.3d 283 (3d Cir. 1998)..............18, 20

*In re Synthroid Marketing Litig.*, 188 F.R.D. 295 (N.D. Ill. 1999).........................................20

*In re Telectronics Pacing Sys., Inc.*, 172 F.R.D. 271 (S.D. Ohio 1997) .........................18, 20

*In re Tri-State Crematory Litig.*, 215 F.R.D. 660 (N.D. Ga. 2003) ...........................................6

*Jackson v. Travelers Ins.*, 26 F. Supp. 2d 1153 (S.D. Iowa 1998).........................................20

*Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487 (1941)...........................................11, 12

*Klay v. Humana, Inc.*, 382 F.3d 1241 (11th Cir. 2004)....................................................18

*Laster v. T-Mobile United States, Inc.*, 407 F.Supp.2d 1181 (C.D. Cal. 2005) .........................24

*Lerch v. Citizens First Bancorp., Inc.*, 144 F.R.D. 247 (D.N.J. 1992).........................................7

*Lewallen v. Medtronic USA, Inc.*, 2002 U.S. Dist. LEXIS 20153 (N.D. Cal. 2002) .................14

*Magnant v. Medtronic, Inc.*, 818 F. Supp. 204 (W.D. Mich. 1993).........................................20

*Mahne v. Ford Motor*, 900 F.2d 83 (6th Cir. 1990)....................................................19

*Mass. Mut. Life Ins. Co. v. Superior Court*, 97 Cal.App.4th 1282 (2002)...................................21

*Microsoft Corp. v. Suncrest Enter.*, 2006 U.S. Dist. LEXIS 20980 (N.D. Cal. Jan. 6, 2006).......................................................................................................................9

*Moeller v. Taco Bell Corp.*, 220 F.R.D. 604 (N.D. Cal. 2004)................................................25

*Nesladek v. Ford Motor Co.*, 876 F. Supp. 1061 (D. Minn. 1994) ...........................................7

*Norwest Mortgage v. Superior Court*, 72 Cal.App.4th 214 (1999)...........................................6

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985)........................................................passim

*Prata v. Superior Court*, 91 Cal.App.4th 1128  (2001)...........................................................22

*Reilly v. NatWest Markets Group, Inc.,* 181 F3d 253 (2d Cir. 1999)...........................................9

*Roberts v. Heim*, 670 F. Supp. 1466 (N.D. Cal. 1987)...........................................................13, 15

*Robinson, Leatham & Nelson, Inc. v. Nelson*, 109 F.3d 1388 (9th Cir. 1997) ...........................14

*Simon v. Philip Morris*, 124 F. Supp. 2d. 46 (E.D.N.Y. 2000) ...................................................11

*Smith v. Stonebridge Life Ins. Co.*, 2003 U.S. Dist. LEXIS 13894 (D. Minn. Aug. 8, 2003).......................................................................................................................................7

*Spence v. Glock, GES.m.b.H.*, 227 F.3d 308 (5th Cir. 2000) .....................................................13

*Surowitz v. Hilton Hotels*, 383 U.S. 363 (1966)........................................................................25

*Sweet v. Pfizer*, 232 F.R.D. 360 (C.D. Cal. 2005).....................................................................14

*Taylor v. Shaw*, 2007 U.S. Dist. LEXIS 16305 (D. Nev. 2007) ..................................................9

*Thomas & Thomas Rodmakers, Inc. v. Newport Adhesives & Composites, Inc.*, 209 F.R.D. 159 (C.D. Cal. 2002) ......................................................................................25

*United States EEOC v. Caesars Entm't, Inc.*, 237 F.R.D. 428 (D. Nev. 2006) ...........................9

*United States v. Taylor*, 166 F.R.D. 356 (M.D.N.C. 1996)..........................................................9

*Vasquez v. Superior Court*, 4 Cal.3d 800 (1971) ...............................................................21, 22

*Walker v. Ryan's Family Steak Houses, Inc.*, 400 F.3d 370, 377 (6th Cir. 2005) ........................4

*Washington Mutual Bank v. Superior Court*, 24 Cal.4th 906 (2001).....................................passim

*Weiss v. Mercedes-Benz*, No. 2-93-CV-00096, 39-41 (D.N.J. 1994) .........................................20

*Whiteley v. Philip Morris, Inc.*, 117 Cal.App.4th 635 (2004).................................................23, 25

*World Tanker Carriers Corp. v. M/V Ya Mawlaya*, 99 F.3d 717 (5th Cir. 1996).........................4

*Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180 (9th Cir. 2001)................................passim

## STATUTES

Fed. R. Civ. P. 30(b)(6) ...........................................................................................5, 7, 9, 10

Fed. R. Civ. P. 4(k)(2) ....................................................................................................4, 5

## TREATISES

*Consumer Protection: The Practical Effectiveness of State Deceptive Trade Practices Legislation*, 59 Tul. L. Rev. 427, 427-29 (1984) .................................................19

*Restatement of Torts, Second*, § 533 (1977)...............................................................................23

## I.    INTRODUCTION

The real question posed by Defendants' opposition is whether legal gamesmanship should be permitted to inoculate Defendants' misconduct from legal responsibility.

From the time of the initial case management conference ("CMC"), this case has always been a bit different factually and procedurally. In defending against class certification, Defendants do not deny that their graphics cards were not HDCP ready. Nor do they deny that the cards' capability was misrepresented to the Class. Rather, Defendants' argument is predicated on three stunningly candid propositions:

- We may have lied, but since very few people understand the technology about which we lied, no one should care about our lies;

- We may have lied, but since we said our cards could provide a technological advantage that no one in the world could actually use, no one should be surprised by our lie;[1]

- We may have lied, but since we lied to so many people in so many different places in the world, no one set of laws can apply to us, so we cannot be held accountable for the lies we told.

The credibility of Defendants' opposition to Plaintiffs' motion is as much determined by the unusual procedural posture as the law. Rather than moving to dismiss, Defendants answered the complaint. Defendants never produced a single piece of paper as part of its Rule 26 disclosures. At the CMC, Defendants represented that they would defend class certification based on legal reliance.[2] At the CMC it was concluded that class discovery may be unnecessary (or at least greatly limited). Shortly thereafter, Defendants stipulated (and the Court instructed) that Plaintiffs move for class certification prior to conducting any discovery and that after Defendant reviewed the

---

[1] ATI's Opposition smugly boasts that even if the cards it sold as "HDCP Ready" actually had the HDCP components it did not have, the cards would not have worked anyway, because the cards also did not possess "the processing power" that would have been needed to be able to play HDCP content. (Strasser Decl, ¶25).

[2] At the CMC, Defendants cited two cases that are now before the California Supreme Court and, may no longer be cited as authority.

1   motion it would entertain stipulations in lieu of discovery.

2          With hindsight, it is now apparent that it was at this point that Defendants substituted

3   gamesmanship for good faith.  Among the numerous stipulations requested by Plaintiffs was that

4   "substantially all of the conduct complained of occurred in, or emanated from, the state of

5   California." Parisi Decl., Ex. 4, p. 31.  In response, Defendants offered to stipulate "Whether the

6   conduct complained of occurred in or emanated from California may be established by proof

7   common to the class" and represented this would "make it unnecessary for you to conduct

8   discovery [prior to class certification]."  Parisi Decl., Ex. 4, pp. 20 & 31.

9          Plaintiffs relied on the stipulation and were therefore surprised by the tact taken by

10   Defendants in their opposition to the motion for class certification.  In the opposition, Defendants

11   contended for the first time that there is an insufficient nexus to California and that only Ontario

12   law should be applied.  As set forth herein, Defendants are wrong because (1) contrary to

13   Defendants' argument, *Shutts* does not decide which states' laws apply – rather, it decides which

14   states' law may *not* apply constitutionally; (2) Plaintiffs have developed an adequate factual record

15   over the past two weeks to show that the application of California law to a nationwide class is

16   constitutional; (3) Defendants should not be permitted to make an argument that is contrary to

17   stipulation and in stark contrast to representations that they made to Court regarding the scope of

18   discovery[3]; and (4) the other arguments made by Defendants, beginning with reliance, are equally

19   misplaced and should be found to be insufficient for denying the putative class its day in Court.

20          Wherever Defendants' conduct occurred, it was still an illegal and actionable lie.  And

21   whether the analysis takes place under California law, the laws of the 50 states, or the laws of

22   Ontario, certification is proper because, regardless of jurisdictional application, Defendants'

23   conduct was illegal and actionable under ***any*** jurisdiction's laws, and a class is properly certified to

24

25

26          [3] Defendants represented before Magistrate Lloyd that "[Defendants' counsel] provided a series of
27   stipulations to [Plaintiffs] where we are conceding there may be proof common to the class. . . In other
    words, we conceded that they can satisfy . . . that requirement for class certification.  Parisi Decl., Ex. 1,
28   Sahjpaul Dep., 97:13-98:1; 99:5-11; 100:5-6.

address that conduct for everyone who was affected by it.[4]

## II.   APPLICATION OF CALIFORNIA LAW TO CALIFORNIA STATUTORY CONSUMER AND BREACH OF WARRANTY CLAIMS IS CONSTITUTIONAL

### A.   Application of California Law to Plaintiffs' Claims of Improper Design, Advertising, Distribution and Sales Are Well Within Due Process Restrictions Recognized in *Shutts*

Plaintiffs allege that Defendants and its California subsidiaries) designed, then advertised, then distributed and sold the graphics cards as having attributes they did not have – Defendants' marketed their cards as able to play HDCP content (*inter alia*, HD DVDs and Blu-Ray DVDs) that they could not. (Pl.s' Consolid. Compl. ¶¶ 26, 35.)

The central thesis of Defendants' Opposition to Plaintiffs' Motion for Class Certification Defendants' is that the Due Process concerns outlined in *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985) prohibit the certification of a nationwide class under California law.  (Def.s' Opp. 22-31.)  As shown below, Plaintiffs can easily surmount the "modest restrictions on the application of [California] law" imposed under *Shutts*. *Shutts*, 472 U.S. at 818.  The Due Process analysis in *Shutts* derives from *Allstate Ins. Co. v. Hague*, 449 U.S. 302 (1981).  *Shutts*, 472 U.S. at 818-19 (quoting *Allstate*, 449 U.S. at 312-13).  "[F]or a State's substantive law to be selected in a constitutionally permissible manner, that State must have a significant contact or significant aggregation of contacts, creating state interests" in the case's subject matter. *Allstate*, 449 U.S. at 312-13 (quoted by *Shutts*, 472 U.S. at 818). The application of California law to this proceeding is well within these broad constraints.

### 1.   *Shutts'* Due Process Analysis Sought to Insure Fundamental Fairness and is Not a Loophole for Foreign Companies to Escape Nationwide Class Actions, Therefore Application of Ontario Law is Not Required

The Due Process clause does not require a forum state to select the law of the jurisdiction with the single most contacts with the facts from which the claims arise – only that the "choice of its law is neither arbitrary nor fundamentally unfair."  *Id*. (quoted by *Shutts*, 472 U.S. at 818).  Rather, *Allstate* and *Shutts* recognized that "in many situations a state court may be free to apply

---

[4] To demonstrate this point and rebut Defendants' baseless and conclusive arguments, Plaintiffs submit herewith as an Appendix its choice of  law/conflict of laws analysis of the 50 states and DC.

one of several choices of law." *Shutts*, 472 U.S. at 823; *Allstate*, 449 U.S. at 307.

Defendants misconceive the role of the *Shutts* analysis. The *Shutts* analysis does not decide which states' laws apply – rather, it decides which states' law may *not* apply constitutionally. [5]

> [O]nce it is determined that the forum state has sufficiently significant contact with the plaintiffs' claims, the relative interests of other states generally is not a matter of constitutional concern. Rather, the decision whether and how to balance the relative interests of 'competing' states, all of whom have constitutionally sufficient contacts with the plaintiffs' claims, is a matter of state choice-of-law rules.

*In re Activision Secs. Litig.*, No. C 83 4639, 1985 U.S. Dist. LEXIS 13271, at *12-13 (N.D. Cal. Dec. 2, 1985) (citing *Allstate*, 449 U.S. at 309 n.8) (emphasis added, citations omitted). Plaintiffs need only establish that California has adequate contacts to the claims asserted, without regard to the Ontario contacts.

Further, the implication of this argument is that no state could apply its laws in a nationwide class action against Defendants, because the misconduct at the center of the case occurred outside the country. If Defendants' argument is endorsed, foreign corporations become invulnerable to state law-based, nationwide class actions. This consideration weighs against denying class certification. *Shutts*' Due Process analysis sought to ensure fundamental fairness, not a loophole for foreign companies to escape nationwide class actions. [6]

---

[5] *Shutts* did "first determine whether Kansas law conflicts in any material way with any other law which could apply," but *Shutts* purpose was to avoid a fruitless "contacts" inquiry in the event there was no conflict. *Shutts*, 472 U.S. at 816. "There can be no injury in applying Kansas law if it is not in conflict with that of any other jurisdiction connected to this suit." *Id.* The conflicts test "is important because unless such a conflict exists, it would be impossible for the application of forum law to violate the Constitution." *In re Computer Memories Secs. Litig.*, 111 F.R.D. 675, 686 (N.D. Cal. 1986). Only if a conflict exists, must the Court determine whether significant contacts or a significant aggregation of contacts exists. *Id. See also Walker v. Ryan's Family Steak Houses, Inc.*, 400 F.3d 370, 377 (6th Cir. 2005); *Boehner v. McDermott*, 332 F. Supp. 2d 149, 154 (D.D.C. 2004).

[6] Cf. Fed. R. Civ. P. 4(k)(2) (federal courts may exercise general personal jurisdiction "over the person of any defendant who is not subject to the jurisdiction of the courts of general jurisdiction of any state"). As the Advisory Committee Notes explain, the purpose of Rule 4(k)(2) was to "correct[ ] a gap in the enforcement of federal law," whereby defendants would be "shielded from the enforcement of federal law by the fortuity of a favorable limitation on the power of state courts." Fed. R. Civ. P. 4(k)(2) Advisory Committee's Note. Rule 4(k)(2) embodies a policy prohibiting foreign entities like ATI from using their foreign status to evade liability. Rule 4(k)(2) "broadens the geographical application of the minimum contacts doctrine beyond the boundaries of the forum state to include all contacts to the United States as a whole." *Exter Shipping Ltd. v. Kilakos*, 310 F. Supp. 2d 1301, 1313 n.4 (N.D. Ga. 2004) (*citing World Tanker Carriers Corp. v. M/V Ya Mawlaya*, 99 F.3d 717 (5th Cir. 1996)).

Finally, Defendants read a monomaniacal focus into *Shutts* that would exclude from consideration any fact that does not constitute part of Plaintiffs claim. "[W]hile [ATI's] subsidiaries may have contacts with California, those contacts are not related 'to the claim,' as is required by *Shutts*." (Def.s' Opp. 26.)  Defendants again misread *Shutts*.

*Shutts* does not restrict application of a forum's law to those claims with contacts to the forum, but rather prohibits application of a forum's law to claims in which the forum has no state interests. *Shutts*, 472 U.S. at 820 ("Given Kansas' lack of 'interest' in claims unrelated to [it], and . . . substantive conflict with [other] jurisdictions . . . application of Kansas law to every claim in this case" was unconstitutional, emphasis added). *Allstate* found that Minnesota had an interest in the plaintiff's claim even though the decedent "was not killed while commuting to work or while in Minnesota." *Allstate*, 449 U.S. at 315. *Allstate* found that facts giving rise the claim at issue "need not occur within a particular jurisdiction for that jurisdiction to be connected to the occurrence." *Id*. States' interests may be peripheral to the facts of the claims under *Shutts* analysis; that does not mean that they do not exist. Defendants' authorities are not to the contrary.[7]

> ### 2. Plaintiffs Can Establish Sufficient Business, Design and Manufacturing Contacts to Apply California Law Under *Shutts*

Defendants assert that Plaintiffs have offered "[n]o evidence . . . that shows that these three subsidiaries were the source of the conduct that is the basis of plaintiffs' claims."  (Def.s' Opp. 26.) While the absence of evidence in the opening brief was a result of court order and defendants' argument was contrary to their previous stipulation and representations to the court[8], *see below*,

---

Defendants have more with California than with any other state in the nation. It is obvious that Defendants do not object to the application of California law, but to the certification of a national class. Rule 4(k)(2) reflects that our federal policy is not to coddle foreign defendants who seek strategic advantages from the fact that they are foreign.

[7] *Cf. Church v. Consolidated Freightways, Inc.*, No. C-90-2290, 1992 U.S. Dist. LEXIS 18234, at *16 (D. Cal. 1992) (defendants "either resided or conducted business in California," emphasis added); *In re Pizza Time Theatre Sec. Litig.*, 112 F.R.D. 15, 18 (N.D. Cal. 1986) (applying California law to "non-resident . . . defendants . . . selling the stock of the California corporation in California as well as throughout the nation"); *In re Computer Memories Secs. Litig.*, 111 F.R.D. at 686 (N.D. Cal. 1986) (considered capital raised by the offering went to company offices in California, and defendants transacting business in California)

[8] Defendants' counsel objected intermittently that the deponents' testimony exceeded the noticed matters in their Fed. R. Civ. P. 30(b)(6). This objection was baseless in that the notice of

1   plaintiffs can show that the contacts between their claims and California are more than adequate.[9]

2         ATI "can hardly claim unfamiliarity with the laws of the host jurisdiction and surprise that

3   the state courts might apply forum law to litigation in which the company is involved." *Allstate*,

4   449 U.S. at 317-18 (defendant was present and doing business in Minnesota). *Cf. In re Tri-State*

5   *Crematory Litig.*, 215 F.R.D. 660, 678 (N.D. Ga. 2003) (where plaintiffs and defendants from

6   multiple jurisdictions, sufficient contacts to apply Georgia law where "at least a portion of

7   [cremation] contract was to be performed in Georgia"); *Emergency One v. Waterous Co.*, 23 F.

8   Supp. 2d 959, 969 (E.D. Wis. 1998) (choice of law not necessarily subject to a higher contacts

9   threshold than personal jurisdiction, *citing Allstate*, 449 U.S. at 317 n.23)  ATI Technologies, Inc.

10  does a significant amount of business in California. Parisi Decl., Ex. 2, McIntosh depo., 115:1-

11  117:3. ATI Technologies Inc. leases a 104,000 square foot engineering facility in Santa Clara,

12  California. Parisi Decl., Ex. 3, p. 24. Further, there is a significant presence of ATI Technologies,

13  Inc.'s directors and officers in California. Two of the seven directors of ATI Technologies Inc.

14  reside in California. Parisi Decl., Ex. 3, p. 44. The Chief Executive Officer and President of ATI

15  Technologies Inc. worked in California in 2005 and 2006. Parisi Decl., Ex. 2, McIntosh depo.,

16  34:21-35:7; Parisi Decl., Ex. 3, p. 45. ATI Technologies Inc.'s Senior Vice President of Worldwide

17  Sales works in California. (Parisi Decl., Ex. 2, McIntosh depo., 33:7-16. ATI Technologies Inc.'s

18

19  Rule 30(b)(6) deposition is "the minimum about which the witness must be prepared to testify, not
    the maximum." *Detoy v. City & County of San Francisco*, 196 F.R.D. 362, 365-367 (N.D. Cal.
20  2000) Rule 30(b)(6) obligates the responding party to provide a witness who can answer questions
    regarding the subject matter listed in the notice.

21        [9] In a footnote, Defendants mis-cite *Norwest Mortgage v. Superior Court*, 72 Cal.App.4th
    214, 85 Cal.Rptr.2d 18 (1999) for the proposition that "California's UCL [is] not applicable to
22  claims for 'injuries suffered by non-California residents, caused by conduct occurring outside of
    California's borders, by defendants whose headquarters and principal places of operations are
23  outside of California.'" (Def.s' Opp. 27 n.30., *citing Id.*, 72 Cal.App.4th at 225, 85 Cal.Rptr.2d at
    25). In fact, *Norwest Mortgage* recognized that "state statutory remedies may be invoked by out-of-
24  state parties when they are harmed by wrongful conduct occurring in California." *Norwest
    Mortgage*, 72 Cal. App.4th at 225, 85 Cal.Rptr.2d at 25 (*citing Diamond Multimedia Sys. v.
25  Superior Court*, 19 Cal.4th 1036, 968 P.2d 539 (1999)). Conversely, in *Diamond*, the California
    Supreme Court held California "has a clear and substantial interest in preventing fraudulent
26  practices in this state which may have an effect both in California and throughout the country."
    *Diamond Multimedia*, 19 Cal.4th at 1063, 968 P.2d at 556. The activities listed above demonstrate
27  that a substantial portion of Defendants' tortious conduct took place in this state (not least the
    design and procurement of cards that could not and would not play HDCP content).

28

1    Senior Vice President/General Manager resides in California. Parisi Decl., Ex. 3, p. 45.

2              California "has a substantial interest in preventing the corporate form from becoming a

3    shield for unfair business dealing." *CTS Corp. v. Dynamics Corp. of Am.*, 481 U.S. 69, 93 (1987).

4    Federal courts have found sufficient contacts under *Shutts* even where only some of the defendants

5    were domiciled in the forum state. *Ferris, Baker Watts, Inc. v. Deutsche Bank Sec. Ltd*, No. 02-

6    3682, 2004 U.S. Dist. LEXIS 22588, at *14 (D. Minn. Nov. 5, 2004) (application of New Jersey

7    law to claims of non-New Jersey plaintiffs constitutional where some, but not all of defendants

8    were domiciled in New Jersey); *Smith v. Stonebridge Life Ins. Co.*, No. 03-1006, 2003 U.S. Dist.

9    LEXIS 13894, 8-9 (D. Minn. Aug. 8, 2003) (application of forum law where defendant processed

10   plaintiffs' claim and kept its headquarters). ATI's subsidiaries (ATI Research, Inc., ATI

11   Technologies Systems Corp., and ATI Research Silicon Valley Inc.) are incorporated in California

12   and headquartered in the Santa Clara offices leased by ATI. *Cf. Lerch v. Citizens First Bancorp.,

13   Inc.*, 144 F.R.D. 247, 257 (D.N.J. 1992) (defendant's subsidiary maintain business offices in the

14   forum state). ATI Technologies Inc. admits that the "activity" of ATI Technologies Systems Corp.

15   is "U.S. sales and distribution." Parisi Decl., Ex. 3, p. 7. Defendants Rule 30(b)(6) designee for

16   admits that "stand-alone graphic cards are sold under ATI Technologies Systems Corp." Parisi

17   Decl., Ex. 2, McIntosh depo., 72:21-73:2.

18             Courts have found that a forum has an interest in applying its law to products produced in

19   the forum. *See*, *e.g.*, *In re Benedictin Litig.*, 857 F.2d 290, 304-05 (6th Cir. 1988) (applying the law

20   of the state of drug manufacture to the claims of plaintiffs domiciled elsewhere); *In re Air Crash

21   Disaster at Mannheim, Germany on 9/11/82*, 769 F.2d 115, 120 n.7 (3d Cir. 1982) (applying law of

22   the state of helicopter manufacture, though plaintiffs were domiciled and accident occurred

23   elsewhere, in light of state's interest in governing manufacturing liability within its borders);

24   *Calenstolpe v. Merck & Co., Inc.*, 638 F. Supp. 901, 910 (S.D.N.Y. 1986) (applying law of the

25   place of vaccine's "development and manufacture" to claims by foreign plaintiffs); *Nesladek v.

26   Ford Motor Co.*, 876 F. Supp. 1061, 1068 (D. Minn. 1994) (applying forum law where only

27   contacts were introduction of defective product in forum, defendants doing business in forum, and

28

plaintiff, survivor of decedent, moved to forum prior to bringing suit). The research and

development for all Defendants is performed in California by ATI Research, Inc. and ATI Research

Silicon Valley Inc. Parisi Decl., Ex. 3, p. 7. ATI Research Silicon Valley Inc. and ATI Research,

Inc. design the graphics processing units which become the central part of graphics boards, and the

graphics cards at issue in this lawsuit were designed in California. Parisi Decl., Ex. 2, McIntosh

depo., 111:15-17; 112:5-9.

California's contacts to this claim must be contrasted with the facts in *Shutts*, where the

Kansas Supreme Court certified a national class action against a defendant domiciled in Delaware

with its principal place of business in Oklahoma: "99% of the gas leases and some 97% of the

plaintiffs in the case had no apparent connection to the State of Kansas except for this lawsuit."

*Shutts*, 472 U.S. at 814. This case is not *Shutts*: many of the plaintiffs could readily expect to sue

ATI in California. *Cf. id*. at 822 ("expectation of the parties" one of the most important elements in

*Shutts* analysis).

**B.      Defendants' Gamesmanship With Respect to Their *Shutts* Arguments
          Improperly Curtailed Plaintiffs' Discovery and Violated Rule 30(b)(6)**

Pursuant to the Court's instructions at the Case Management Conference on September 18,

2006, Plaintiffs forewent any discovery regarding class certification until the parties stipulated on

which matters would require discovery. In response to Plaintiffs' proposed stipulation that "[i]n this

case, substantially all of the conduct complained of occurred in, or emanated from, the state of

California," Defendants counter-proposed a stipulation that "Whether the conduct complained of

occurred in or emanated from California may be established by proof common to the class."  Parisi

Decl., Ex. 4, p. 31. Defendants consistently represented to Plaintiffs that the phrase "can be

established by proof common to the class" denoted that Defendants conceded the matter for class

certification purposes (and that Plaintiffs could take no discovery on such matters).

Indeed, Defendants' counsel repeated this representation to the Court:

> [Defendants' counsel] provided a series of stipulations to [Plaintiffs] where we are
> conceding there may be proof common to the class. . . In other words, we conceded
> that [Plaintiffs] can satisfy . . . that requirement for class certification.

Parisi Decl., Ex. 1, Sahjpaul depo., 97:16-18; 97:21-98:1; 99:6-11; 100:4-6. Consequently,

1  Plaintiffs first learned that Defendants contested the factual basis for the application of California

2  law on a class-wide basis from Defendants' March 29, 2007 opposition brief.[10] The *Shutts*-based

3  attacks on class certification in Defendants' Opposition breached the parties' February 14, 2007

4  stipulations.

5    To bolster the factual record built independent of party discovery, Plaintiffs sought to rebut

6  Defendants' surprise attack by noticing two Rule 30(b)(6) depositions regarding the role the

7  California subsidiaries played with respect to the issues involved in the litigation. Defendants'

8  response to the depositions was still more gamesmanship that improperly and significantly curtailed

9  Plaintiffs' discovery.

10    Rule 30(b)(6) requires Defendants to designate persons who "shall testify as to matters

11  known or reasonably available to the organization." Fed. R. Civ. P. 30(b)(6). Defendants are not

12  only required to "produce such numbers of person as will satisfy the request, but more importantly,

13  *prepare them so that they may give complete, knowledgeable and binding answers on behalf of the*

14  *corporation*." *United States v. Taylor*, 166 F.R.D. 356, 360-361 (M.D.N.C. 1996) (cited by *Taylor*

15  *v. Shaw*, No. 2:04-cv-01668-LDG-LRL, 2007 U.S. Dist. LEXIS 16305, at *4-5 (D. Nev. 2007));

16  *United States EEOC v. Caesars Entm't, Inc.*, 237 F.R.D. 428, 434-435 (D. Nev. 2006)) (emphasis

17  added). Rule 30(b)(6) obliges Defendants to educate its deponents on all the information

18  reasonably available to Defendants regarding the matters noticed for deposition, so that the

19  deponents can fully answer questions on such matters. "If the persons designated by the corporation

20  do not possess personal knowledge of the matters set out in the deposition notice, the corporation is

21  obligated to prepare the designees so that they may give knowledgeable and binding answers for the

22  corporation." *Id.* at 361 (quoted in *Microsoft Corp. v. Suncrest Enter.*, No. C03-05424, 2006 U.S.

23  Dist. LEXIS 20980, at *4-5 (N.D. Cal. Jan. 6, 2006)). Defendants failure to produce or educate its

24  designees is sanctionable. *Black Horse Lane,* 228 F.3d at 303-04. *See also Reilly v. NatWest*

25  *Markets Group, Inc.,* 181 F3d 253, 268 (2d Cir. 1999) (more knowledgeable witnesses precluded

26

27    [10] Defendants argue in their opposition that "[n]o evidence was offered . . . that these three
subsidiaries were the source of the conduct that is the basis of plaintiffs' claims. . . [P]laintiffs have
failed to meet their burden of establishing predominance." Def.s' Opp., 26.

28

1    from testifying at trial).

2          At the start of the April 12, 2007 deposition of the person Defendants previously designated

3    as the person most knowledgeable regarding the marketing at the center of Plaintiffs' claims,

4    Defendants' counsel improperly attempted to withdraw the deponent's designation without

5    explanation. Parisi Decl., ¶8. Plaintiffs have therefore not been able to take the deposition of a

6    deponent designated as to the marketing relevant to Plaintiffs' claims. Further, this deponent was

7    essentially ignorant of the Defendants' corporate structure relevant to the deposition.[11] Defendants'

8    counsel also improperly instructed the deponent not to answer several questions.  Parisi Decl., ¶2.

9          Defendants constructively refused to produce a Rule 30(b)(6) deponent as to the role the

10   California ATI subsidiaries played with respect to the sales and distribution of the video cards

11   which are the subject of this lawsuit, and the locations of ATI's distribution centers. The deponent

12   produced by Defendants was essentially ignorant of the corporate structure relevant to the

13   deposition (Parisi Decl., ¶3), displayed large gaps in his knowledge regarding the role of ATI's

14   California subsidiaries in the distribution of video cards (Parisi Decl.,¶4), and was plainly evasive

15   on a number of other matters. Parisi Decl., ¶5.

16         Restricted to the testimony of their 30(b)(6) deponents, Defendants will not be able to

17   advance any evidence to contradict assertions that 1) the port of entry for the video graphics cards

18   was California, 2) the California *ad valorem* tax on the graphics cards was paid by the Ontario

19   corporation, 3) the electronic inventory tracking records for the graphics cards are located in

20   California, 4) members of the sales team in California told distributors that they sold to that the

21   graphics cards were HDCP capable or ready, 5) the marketing of the ATI video graphics cards at

22   issue in this lawsuit emanated from California, 6) the graphics cards were tested and designed in

23   California, and 7) Defendants conspired together to market, sell and distribute the cards designed in

24

25         [11] The April 12, 2007 deponent did not know 1) of the existence of ATI Research Silicon
     Valley, Inc. (Parisi Decl., Ex. 1, Sahjpaul Dep., 24:10-12; 48:18-22); 2) that ATI Research Inc. is
26   located in California (*Id.* at 24:16-10); 3) that ATI Systems Corporation is located in California (*Id.*
     at 24:21-25:2); or 4) whether ATI Research, Inc., ATI Technologies Systems Corp. and ATI
27   Research Silicon Valley are subsidiaries of ATI Technologies, Inc. (*Id.* at 49:2-21). These
     companies are, indeed, ATI subsidiaries. Parisi Decl., Ex. 3, p. 7.
28

California. *Cf. Simon v. Philip Morris*, 124 F. Supp. 2d 46, 70 (E.D.N.Y. 2000) (finding sufficient Due Process contacts through Defendants' activities in forum state, emphasizing that activities "relate to the alleged conspiracy that led to plaintiff's damages").

## III.   CALIFORNIA CHOICE OF LAW RULES PERMIT CLASSWIDE APPLICATION OF CALIFORNIA CLAIMS

Defendants' assertion that California law cannot be constitutionally applied to non-California class members is easily dealt with in Section III, *supra*. At the root of Defendants' erroneous assertion is a fundamental misunderstanding between the minimal federal Constitutional constraints on national class actions and the California conflict of law analysis that must be performed before applying California law to non-California residents' claims. *Cf.* Def.s' Opp. 22-31. Most of the cases cited by Defendants to defeat class certification are actually concerned with California's choice of law, rather than the Due Process constraints as explained by *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985). Given this confusion, it is not surprising that Defendants incorrectly analyze the choice of law rules applicable to Plaintiffs' claims. This Section addresses the choice of law issues raised by the authorities Defendants cite in their Opposition for Due Process issues.

### A.   The *Shutts* Analysis and a Forum State's Choice of Law Rules Are Distinct Issues

As many of the authorities cited by Defendants instruct, these are two analyses are intertwined – but ultimately distinct. *Shutts* adapted Allstate's construction of the Due Process Clause to a national class action, and imposed a minimum level of contacts with the jurisdiction whose law is applied. *Shutts*, 472 U.S. at 818-19, 822. As shown in Section III, Plaintiffs have readily established the "significant aggregation of contacts" necessary to apply California law consistent with the Due Process Clause.

In contrast, a "federal court sitting in diversity must look to the forum state's choice of law rules to determine the controlling substantive law." *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1187 (9th Cir. 2001) (*citing Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496 (1941)).

Subject only to review by this Court on any federal question that may arise, [state

1          courts are] free to determine whether a given matter is to be governed by the law of
2          the forum or some other law. . . . And the proper function of the [federal court sitting
             in such states] is to ascertain what the state law is, not what it ought to be.

*Klaxon Co.*, 313 U.S. at 496-97. Within the constraints of the Due Process Clause, states are free to

pick their own methods of determining choice of law, and federal courts sitting within those states

are bound to use those methods.[12]

Thus, the state law choice of law analyses and Due Process inquiry under *Shutts* applied to

national class actions are separate and distinct legal issues, controlled by different rules derived

from different authorities. Indeed, many of the cases Defendants cite clearly demonstrate this

distinction. *Washington Mutual Bank v. Superior Court*, 24 Cal.4th 906, 919, 15 P.3d 1071, 1080

(2001) ("even where its own law may be constitutionally applied [under a separate *Shutts* analysis],

California follows a three-step 'governmental interest analysis' to address conflict of laws claims

and ascertain the most appropriate law applicable to the issues"); *Zinser*, 253 F.3d at 1187 (plaintiff

conceded that the law of the forum (California) could not be applied constitutionally, but triggered

separate California choice of law analysis when she attempted to certify under non-California law);

*In re Seagate Technologies Secs. Litig.*, 115 F.R.D. 264, 272 n. 14 (N.D. Cal. 1987) (because

California choice of law analysis may "obviate[] the *Shutts* inquiry[,] the *Shutts* inquiry should

follow -- not precede -- the conflicts of law determination"). *See also In re Computer Memories*

*Secs. Litig.*, 111 F.R.D. at 685-686 (N.D. Cal. 1986) (court's conflicts of law analysis distinct from

*Shutts* analysis).

The *pièce de résistance* of Defendants' *Shutts* arguments is that Plaintiffs did not and could

not perform a 50-state conflicts of law survey that demonstrated the commonality of legal issues as

between class members in different states. Def.s' Opp. 29-31 & n.33. Although this argument has a

number of other fatal flaws, as an initial matter, the 50-state survey requirement trumpeted by

Defendants is *a product of other forum states' choice of law analyses – not a product of the Due*

---

[12] *See also Shutts*, *supra*, 472 U.S. at 823 ("We make no effort to determine for ourselves which law must apply to the various transactions involved in this lawsuit . . ."); *Allstate Ins. Co.*, *supra*, 449 U.S. at 307-308 ("It is not for this Court to say . . . whether we would make the same choice-of-law decision if sitting as the Minnesota Supreme Court").

*Process analysis under Shutts.* "[C]ontrary to Defendants' contention, *Shutts* does not require the court to undertake an individual choice-of-law inquiry into the claims of each and every plaintiff. . . . *Shutts* requires only that a threshold due process inquiry be made into whether the application of a given state's law to the claims of all class members would be arbitrary or unfair." *Roberts v. Heim*, 670 F. Supp. 1466, 1495 (N.D. Cal. 1987).[13]

### B.   Defendants Failed to Demonstrate That Any State's Law Other Than California Applies

Defendants' confusion regarding the authorities it cites extends to the evidentiary burdens those cases impose on Defendants. Plaintiffs do indeed bear the burden of proving that the application of multiple state laws will not "swamp any common issues and defeat predominance." *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 741 (5th Cir. 1996). *See also Zinser*, 253 F.3d at 1189-90 (plaintiffs must establish predominance under Rule 23(b)(3)). However, in a federal court sitting in California, *Defendants* bear the burden of proving multiple states' laws apply:

> Generally speaking the forum will apply its own rule of decision unless a party litigant timely invokes the law of a foreign state. In such event [that party] must demonstrate that the latter rule of decision will further the interest of the foreign state and therefore that it is an appropriate one for the forum to apply to the case before it. . . . Under the first step of the governmental interest approach, the foreign law proponent must identify the applicable rule of law in each potentially concerned state and must show it materially differs from the law of California.

*Wash. Mut. Bank v. Superior Court*, 24 Cal.4th at 920, 15 P.3d at 1080 (quotation marks and citations omitted). Indeed, the California Supreme Court in *Washington Mutual* expressly endorsed allocating of the burden of proof on a class action *defendant* attempting to assert other state laws:

> [S]o long as the requisite significant contacts to California exist, a showing that is properly borne by the class action proponent, *California may constitutionally require the other side to shoulder the burden of demonstrating that foreign law, rather than California law, should apply to class claims. . . . [C]onstitutional limitations are not transgressed by forum state laws that require the class action opponent to show the*

---

[13]   *Cf. Spence v. Glock, GES.m.b.H.*, 227 F.3d 308, 313 (5th Cir. 2000) (class decertified where forum state, Texas, "require[d] that the policies of each state with contacts be examined"); *In re Bridgestone/Firestone Tires Prods. Liab. Litig.*, 288 F.3d 1012, 1014-21 (7th Cir. 2002) (finding that 50 state laws applied only after holding Indiana choice of law rule in *Hubbard Manufacturing Co. v. Greeson*, 515 N.E.2d 1071 (Ind. 1987) "applies the law of the place where harm occurred"); *Chin v. Chrysler Corp.*, 182 F.R.D. 448, 457 (D.N.J. 1998) (application New Jersey choice of law rules requires 50 state survey from class plaintiffs); *In re Ford Motor Co. Ignition Switch Prods. Litig.*, 174 F.R.D. 332, 348 (D.N.J. 1997) (same).

*applicability of foreign law.*

*Id.*, 24 Cal.4th at 920, 921 & n.8, 15 P.3d at 1081 & n.8 (2001) (quoting *Shutts*, 472 U.S. at 821-822) (emphasis supplied). *Washington Mutual*'s the allocation of the burden of proof on choice of law matters is consistent with the federalism principles of *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938): California law controls the burden of proof on choice of law. *Robinson, Leatham & Nelson, Inc. v. Nelson*, 109 F.3d 1388, 1391 (9th Cir. 1997); *Johnston v. Pierce Packing Co.*, 550 F.2d 474, 476 n.1 (9th Cir. 1977). *Cf. Allstate*, 449 U.S. at 326 (Stevens, J., concurring) ("The forum State's interest in the fair and efficient administration of justice is . . . sufficient . . . to attach a presumption of validity to a forum State's decision to apply its own law to a dispute over which it has jurisdiction.") In *Washington Mutual*, the California Supreme Court placed the burden of proving that foreign law applies on the foreign law's proponent – including a class action defendant who contests the predominance of common issues of law.

Plaintiffs seek to apply the law of the forum state in a federal court in California. *Washington Mutual* mandates that, if Defendants want to apply other states' law to try to foil Rule 23(b)(3) predominance, *Defendants* must demonstrate that the application of California law would impair those states' interests more than California's interest would be impaired by the application of those states' laws.[14]

Defendants assert in a footnote that *Zinser* "effectively overruled" a line of cases that held that the "burden was on a defendant opposing class certification to show that California law was

---

[14]   The cases Defendants cite which did not follow *Washington Mutual* are consequently distinguishable. *Lewallen v. Medtronic USA, Inc.*, No. C 01-20395, 2002 U.S. Dist. LEXIS 20153 (N.D. Cal. Aug. 28, 2002) is distinguishable because (contrary to *Washington Mutual* and, thus, to *Klaxon*) placed the burden of the conflict of law analysis on the plaintiff who sought to apply California law. *Id.* at *14-15. *In re Paxil Litig.*, 212 F.R.D. 539 (C.D. Cal. 2003) held that "[a] federal court sitting in diversity must generally apply the substantive law of the state in which each individual plaintiff resides" and, contrary to *Klaxon*, did not apply *any* California choice of law rules. *Id.* at 544. *Church v. Consolidated Freightways, Inc.*, No. C-90-2290, 1991 U.S. Dist. LEXIS 15419 (N.D. Cal. June 14, 1991) is distinguishable simply because it predates Washington Mutual. *Id.* at *37-38.

Likewise, in *Sweet v. Pfizer*, 232 F.R.D. 360 (C.D. Cal. 2005), the Defendants, consistent with *Washington Mutual*, provided "a chart showing each state's and the District of Columbia's negligence and failure to warn standard" and provided proof that choice of law analyses would "swamp [the] Court" and "that the Court would have to apply 51 jurisdictions' substantive law." *Id.* at 372. Defendants here have not provided any analysis challenge the application of California law.

1    inapplicable" (Def.s' Opp. 28 n.32.) Defendants attempt to support this contention with the

2    following quote from *Zinser*: "the party seeking class certification . . . bears the burden of showing

3    that common questions of law or fact predominate." (*Id. quoting Zinser*, 253 F.3d at 1188.)

4    Defendants misconstrue *Zinser*, which held that the *plaintiff as the party* "*seek[ing] to invoke the*

5    *law of a jurisdiction other than California*, . . . *bears the burden of proof*" under *Washington*

6    *Mutual*. *Zinser*, 253 F.3d at 1187 (*citing Wash. Mut.*, 24 Cal.4th at 920-21, 15 P.3d at 1080-81 for

7    proposition that "*under California choice of law rules, foreign law proponent bears burden of*

8    *establishing true conflict*")) (emphasis added). *Zinser* first applied *Washington Mutual*'s choice of

9    law rules, including the allocation of the burden of proof; only after resolving the choice of law

10    issue did the *Zinser* court consider whether, as a matter of federal procedural law, the plaintiff had

11    established the elements necessary to sustain class certification under Rule 23. *Id*. at 1188 (*citing*

12    *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)).

13         Defendants also argue that, "even if the burden were on Defendants to show that California

14    law may not be constitutionally applied to a nationwide class[,] . . . that burden is met by ATI's

15    submission of the Sahjpaul Declaration."  (Def.s' Opp. 28-29 n.32.) Section III established that

16    Plaintiffs' class claims satisfy the Due Process "modest restrictions on the application of forum

17    law." *Shutts*, 472 U.S. at 818. Like the plaintiff in *Zinser*, however, Defendants have

18    "misconstrue[d] California choice of law rules." *Zinser*, 253 F.3d at 1187. Defendants must not

19    only allege contact with other fora, but also "must apply California's three-part conflict test to each

20    non-forum state with an interest in the application of its law." *Id*. Defendants have not performed

21    the three-part choice of law analysis under *Washington Mutual* needed to sustain their challenge

22    that the other 49 states' laws apply and wreck the commonality of the Plaintiffs' class claims. *Id.* As

23    the jurisprudence of this District amply demonstrates, this failure must doom their arguments

24    against class certification.[15]

25

---

26    [15]  *See In re Pizza Time Theatre*, 112 F.R.D. at 20-21 (even assuming that conflicts with
     non-California law existed, "Defendants . . . failed to carry their burden of showing that the
27    interests of other jurisdictions would be more impaired by application of California tort law than by
     their own"). *See also In re Seagate*, 115 F.R.D. at 271 (same); *Roberts v. Heim, supra,* 670 F. Supp.
28    At  1494 (California law applied where Defendants did not meet "their burden of showing that

**1.    There is No True Conflict Between California Law and Ontario Law**

Defendants only present evidence that Ontario's law might apply to this action. Def.s' Opp. 26, *citing* Sahjpaul Decl. Defendants do not provide any evidence that any other jurisdictions' laws might apply, nor do they complete the *Washington Mutual* choice of law analysis -- they do not show any evidence of an actual conflict between Ontario and California law, nor do they establish that Ontario's interests would be more impaired if California law is applied -- let alone any of the 50 other states' laws by which Defendants claim Rule 23(b)(3) predominance. Def.s' Opp. 29-31 & n.33.

This is, perhaps, just as well. It is clear that application of the California's Consumer Protection Act would not conflict with Ontario's interests. Rather, Ontario has explicitly expressed an interest in protecting the reputation of the province as a fair and honest place to do business through the enactment of the *Ontario Consumer Protection Act*, 2002, S.O. 2002, c. 30, Sch. A (Ont.) (the "*Ontario CPA*," Exhibit 7 to Parisi Decl.).

The *Ontario CPA* contains an explicit choice of law provision that extends the *Act*'s protections to consumers outside of Ontario doing business with Ontario companies. *See Ontario CPA* s. 2(1) (*Ontario CPA* applies to "all consumer transactions if . . . the person engaging in the transaction with the consumer is located in Ontario when the transaction takes place"). The *Ontario CPA* was introduced before the Ontario Legislative Assembly as Bill 180 (2002). *See* Legislative Assembly of Ontario, *37:3 Bill 180, Consumer Protection Statute Law Amendment Act, 2002*, *at* http://www.ontla.on.ca/web/bills/bills_detail.do?locale'en&BillID'1048 (2002).

The *Ontario CPA*'s legislative history is clear: the *Act* was not just aimed at protecting Ontario consumers, but also intended to maintain and improve the reputation of Ontario commerce by regulating the conduct of Ontario businesses:

> Mr. R. Gary Stewart (Peterborough): . . . I'm pleased to be able to talk to the proposed Consumer Protection Statute Law Amendment Act, 2002, and the potential benefits. I believe there are major benefits in this act that indeed *will protect Ontario consumers and Ontario businesses. This bill, I believe, is good news both for the*

other states' interests would be more impaired than California's if the court were to use California law."); *In re Computer Memories*, 111 F.R.D. at 685-86 (same); *In re Activision Sec. Litig.*, 621 F. Supp. 415, 430 (N.D. Cal. 1985) (same).

> *consumer and businesses in Ontario. It's part of our government's plan to provide excellent protection for customers and to continue this province's leadership in supporting a growing and healthy economy.*

Legislative Assembly of Ontario, Transcript of Debates, Issue No. L049B, at http://www. ontla.on.ca/house-proceedings/transcripts/files_html/2002-10-28_L049B.htm#P72_2801 (Oct. 28, 2002) (emphasis added).

> Mr. Joseph N. Tascona (Barrie-Simcoe-Bradford): It's my pleasure to speak today in support of the proposed Consumer Protection Statute Law Amendment Act, 2002, Bill 180. . . . We want to make Ontario a trusted destination for e-commerce. *When Ontario is more widely recognized as a secure place to do business on-line, consumers will be more confident in shopping on Ontario-based sites, and more Internet business would be encouraged to set up in this province.*

Legislative Assembly of Ontario, Transcript of Debates, Issue No. L057B, at http://www.ontla. on.ca/house-proceedings/transcripts/files_html/2002-11-18_L057B.htm#P73_2845 (Nov. 18, 2002) (emphasis added).

It is plain that the Ontario legislature enacted the *Ontario CPA* with the intent not only of protecting Ontario consumers, but also to ensuring that Ontario businesses would be trusted by non-Ontario consumers. *Cf. CTS Corp. v. Dynamics Corp. of Am.*, 481 U.S. 69, 93 (1987) ("[The forum jurisdiction] has a substantial interest in preventing the corporate forum from becoming a shield for unfair business dealing"). Application of California's own consumer protection laws against ATI would not conflict with Ontario's interests.

## 2. There is No True Conflict Between California Law and The Law Of Any Other State

While, under *Washington Mutual*, Defendants bear the burden of proving that other states' laws apply – and have failed entirely to do so, Plaintiffs have performed a comparative analysis of the conflicts of consumer protection laws for the states outside California.[16] If the Court deems that Plaintiffs must produce such an analysis in order to certify the proposed class, Plaintiffs submit the attached Appendix. (*See* Pls.' App.) Having reviewed the laws of the other 49 states, there is no

---

[16] Defendants contend that "plaintiffs should not be allowed to 'sandbag' Defendants by waiting to their reply brief to attempt to meet their burden" of demonstrating the predominance of the legal issues. This contention hinges on Defendants' erroneous assumption that Plaintiffs, not Defendants, bear the burden of proof with respect to whether or not non-California law applies. In light of Defendants' conduct with respect to their *Shutts* arguments and the related discovery, this contention sets the teeth of even the most cynical Plaintiffs' counsel on edge.

conflict between California law and laws of the following states:

> Alaska (Pl.s' App. 15); Connecticut (Pl.s' App. 36); Delaware (Pl.s' App. 40); District of Columbia (Pl.s' App. 43); Florida (Pl.s' App. 46); Minnesota (Pl.s' App. 156); Hawaii (Pl.s' App. 54); Idaho (Pl.s' App. 58); Illinois (Pl.s' App. 62); Kansas (Pl.s' App. 126); Kentucky (Pl.s' App. 132); Louisiana (Pl.s' App. 136); Maine (Pl.s' App. 140); Maryland (Pl.s' App. 143); Massachusetts (Pl.s' App. 148); Michigan (Pl.s' App. 151); Mississippi (Pl.s' App. 163); Missouri (Pl.s' App. 167); Nebraska (Pl.s' App. 178); New Hampshire (Pl.s' App. 188); New Jersey (Pl.s' App. 191); New York (Pl.s' App. 200); North Carolina (Pl.s' App. 203); North Dakota (Pl.s' App. 206); Ohio (Pl.s' App. 219); Rhode Island (Pl.s' App. 243); South Carolina (Pl.s' App. 247); South Dakota (Pl.s' App. 250); Tennessee (Pl.s' App. 274); Utah (Pl.s' App. 284); Vermont (Pl.s' App. 291); Washington (Pl.s' App. 301); and West Virginia (Pl.s' App. 304).

Plaintiffs have identified certain differences between California law and the laws of the following states, but has conducted an individualized conflicts of law analysis and determined that application of California law would not impair their interests:

> Alabama (Pl.s' App. 3); Arizona (Pl.s' App. 19); Arkansas (Pl.s' App. 24); Colorado (Pl.s' App. 29); Georgia (Pl.s' App. 50); Indiana (Pl.s' App. 66); Iowa (Pl.s' App. 92); Nevada (Pl.s' App. 182); New Mexico (Pl.s' App. 194); Oklahoma (Pl.s' App. 222); Oregon (Pl.s' App. 228); Pennsylvania (Pl.s' App. 233); Texas (Pl.s' App. 278); Virginia (Pl.s' App. 294); Wisconsin (Pl.s' App. 309); Wyoming (Pl.s' App. 326). The use of subclasses which group class members whose state law claims are similar may assist the court.[17]

The substantial uniformity of the 50 states' consumer protection statutes is the result of a common origin and common history:

> All of the state [unfair or deceptive acts or practices] statutes were inspired by and to some extent patterned after the Federal Trade Commission Act ("FTC Act"). This venerable statute, originally enacted in 1914, prohibits unfair methods of competition in interstate commerce and empowers the FTC to fine violators. . . . The most widely adopted statutes are those patterned upon the model Unfair Trade Practices and Consumer Protection Law ("UTP/CPL") developed jointly by the Federal Trade Commission and the Committee on Suggested State Legislation of the Council of State Governments. Three alternative formulations are recommended in

---

[17] *See Klay v. Humana, Inc.*, 382 F.3d 1241, 1262, 59 Fed. R. Serv. 3d 707 (11th Cir. 2004), cert. denied, 543 U.S. 1081, 125 S. Ct. 877, 160 L. Ed. 2d 825 (2005) ("if the applicable state laws can be sorted into a small number of groups, each containing materially identical legal standards, then certification of subclasses embracing each of the dominant legal standards can be appropriate"); *In re Prudential Ins. Co. America Sales Practice Litigation Agent Actions*, 148 F.3d 283, 315, 41 Fed. R. Serv. 3d 596 (3d Cir. 1998) ("Courts have expressed a willingness to certify nationwide classes on the ground that relatively minor differences in state law could be overcome at trial by grouping similar state laws together and applying them as a unit."); *In re Telectronics Pacing Systems, Inc.*, 172 F.R.D. 271, 292 (S.D. Ohio 1997) (holding that "state law does not need to be universal in order to justify nationwide class certification" and "that state law variations can be categorized and then divided into subclasses").

this model act. The first version . . . tracks the language in the FTC Act and would prohibit "unfair methods of competition" and "unfair or deceptive acts or practices" in the conduct of any trade or commerce. The second [simply prohibits] "false, misleading, or deceptive acts or practices." The third version lists . . . specific unlawful trade practices . . . In addition to the . . . FTC-inspired model acts, the National Conference of Commissioners on Uniform State Laws has developed both the Uniform Consumer Sales Practices Act and the Uniform Deceptive Trade Practices Act (UDTPA). . . The jurisprudence developed pursuant to these various statutes indicates that each one's effectiveness is not determined by the labels affixed to the acts or practices prohibited.

Anthony P. Dunbar, Comment, *Consumer Protection: The Practical Effectiveness of State Deceptive Trade Practices Legislation*, 59 Tul. L. Rev. 427, 427-29 (1984). Given this common origin, the relevant differences between the consumer protection laws of California and the other states are subdued. "[T]he idiosyncratic differences between state consumer protection laws are not sufficiently substantive to predominate over the shared claims." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022-1023 (9th Cir. 1998) (certification of class settlement).

In contrast, ATI's deceptive marketing of its graphics cards as "HDCP Ready" violates the consumer protection laws not only in every state in the United States, but also in its home jurisdiction, Ontario. *Cf. In re Pharm. Indus. Average Wholesale Price Litig.*, 230 F.R.D. 61, 85 (D. Mass. 2005) (permitting national consumer protection class action certification to proceed on behalf of class of 40 million Medicare Part B beneficiaries who made co-payments where "[d]efendants point to no state where the intentional, fraudulent acts alleged would be permitted under the consumer protection statute.").

To the extent that conflicts do exist, they invariably exist because certain states limited their consumer protection laws to limit the liability of local businesses. The application of California's consumer protection laws will not adversely affect the interests reflected by the more limited consumer protection laws of these states. *See Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1006-07 (9th Cir. 2001) ("Hawaii . . . had no interest in limiting the extent of relief that its residents could obtain for a wrongful act against them in California"; such an argument was "pure fancy"); *Mahne v. Ford Motor*, 900 F.2d 83, 88 (6th Cir. 1990) (Florida statute of repose intended to protect Florida manufacturers; application of statute to Florida accident involving a Florida plaintiff "would not benefit the interest it was designed to protect"); *Jackson v. Travelers Ins.*, 26 F. Supp.

1  2d 1153, 1162 (S.D. Iowa 1998); *Magnant v. Medtronic, Inc.*, 818 F. Supp. 204, 207 (W.D. Mich.

2  1993) (Michigan's interest in protecting its own citizens did not weigh in favor of Michigan law

3  where Minnesota law provided more protection); *Friends for All Children, Inc. v. Lockheed*

4  *Aircraft Corp.*, 587 F. Supp. 180, 191 (D.D.C. 1984). ATI's ties are to Ontario and California: no

5  state outside of Ontario and California has any interest in limiting consumers' recovery against

6  ATI.

7        Consequently, application of California law is constitutionally adequate and satisfies

8  California's choice of law rules. There is no reason to apply any other law to this case.

9              **3.      Even With No California Nexus, State Law Variations Are Minimal,**
                        **Non-Existent, or Irrelevant to the Class Claims**

10       Even if the Court's choice of law analysis yields the conclusion that it cannot apply

11  California law to Plaintiffs' state law claims, class certification of these claims is nonetheless

12  proper. Throughout their thirty-five page Opposition, Defendants overstate (and misstate) the

13  number, the materiality, and the relevance of purported variations of state laws to the claims at

14  issue in this case. Potential variations in state laws do *not* preclude multi-state class certification as

15  a matter of course.[18]  Otherwise, multi-state class certification would virtually always be

16

17        _____
         [18]  *See, e.g., Hanlon, supra,*150 F.3d at 1022 ("Variations in state law do not necessarily
18  preclude a 23(b)(3) action . . ."); *In re Prudential Ins. Co. of Am.*, 148 F.3d 283 (3d Cir. 1998)
    ("Courts have expressed a willingness to certify nationwide classes on the ground that relatively
19  minor differences in state law could be overcome at trial by grouping similar state laws together
    and applying them as a unit"; upheld district court's conclusion that state law variations fell into a
20  limited number of predictable patterns and did not render action unmanageable); *In re General*
    *Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 815 (3d Cir.), *cert. denied*,
21  516 U.S. 824 (1995) ("to the extent that state-by-state variations in procedural laws created legal
    obstacles, the district court should have considered dividing the action into geographic sub-classes
22  instead of considering the entire nationwide class to be hobbled"); *In re Synthroid Marketing Litig.*,
    188 F.R.D. 295, 302 (N.D. Ill. 1999) (same); *In re Telectronics Pacing Sys., Inc.*, 172 F.R.D. 271,
23  292 (S.D. Ohio 1997) ("state law does not need to be universal in order to justify nationwide class
    certification"; district court has discretion to decide if variances would make the case manageable);
24  *In re Copley Pharmaceutical, Inc.*, 161 F.R.D. 456, 465 (D. Wyo. 1995) ("Application of law of all
    fifty states does not make class 'per se unmanageable'"; Defendants' real motivation for moving to
25  decertify was to slam the courthouse door on individual plaintiffs) (*quoting In re Lilco Sec. Litig.*,
    111 F.R.D. 663, 670 (E.D.N.Y. 1986)); *Weiss v. Mercedes-Benz*, No. 2-93-CV-00096, at 39-41
26  (D.N.J. Mar. 28, 1994) (national automobile class asserting common law fraud, breach of express
    and implied warranties, and negligent misrepresentation claims certified as "fairly uniform" despite
27  "modest variations sometimes in terminology and perhaps in the case law of a given state");
    *Washington Mut. Bank*, 15 P.3d 1071 (court "may certify the nationwide class despite such
28  complexity [arising from the need to apply laws of class members' home states] if it determines the
    legal questions are sufficiently similar to be manageable"); *Avery v. State Farm Mut. Auto. Ins. Co.*,

1    impossible, and Rule 23 would be eviscerated. *See Telectronics,* 172 F.R.D. at 292 ("only particular

2    nuances should be relevant to the question of class certification . . . insignificant differences cannot

3    preclude class certification or else no class could even be certified").[19]

4    **IV.    CALIFORNIA LAW DOES NOT REQUIRE INDIVIDUALIZED PROOF OF RELIANCE FOR PLAINTIFFS' CLAIMS**

5           Defendants contend at some length that Plaintiffs must provide individualized evidence of

6    reliance for each class members. Def.s' Opp. 15-19. Defendants acknowledge, however, California

7    law recognizes a presumption of reliance where the misrepresentation is material. Def.s' Opp. 19-

8    20.)  *Vasquez v. Superior Court,* 4 Cal. 3d 800, 814, 484 P.2d 964, 972-73 (1971).

9                      [I]t is not necessary to show reliance upon false representations by direct evidence. .
10                   . .  The fact of reliance upon alleged false representations may be inferred from the
                     circumstances attending the transaction which oftentimes afford much stronger and
11                   more satisfactory evidence of the inducement which prompted the party defrauded to
                     enter into the contract than his direct testimony to the same effect. . . .  [I]f the trial
12                   court finds material misrepresentations were made to the class members, at least an
                     inference of reliance would arise as to the entire class.  *Id.*[20]

13          This case is strongly analogous to *Vasquez*: both concern standardized false advertising of

14    consumer goods. In *Vasquez*, the misrepresentations included a "standard statement containing the

15    representations (which in turn were based on a printed narrative and sales manual) and that this

16    statement was recited by rote to every member of the class." *Id.*, 4 Cal.3d at 811-12, 484 P.2d at

17    971. *See also Mass. Mut. Life Ins. Co. v. Superior Court*, 97 Cal.App.4th 1282, 1292-1295, 119

18    Cal.Rptr.2d 190, 197-199 (2002) (broad dissemination life insurance policy information to

19    prospective purchasers justified conclusion "that the ultimate question of whether the undisclosed

20    information [relevant to the policys' value]) was material was a common question of fact suitable

21

22    2001 Ill. App. LEXIS 249, *29 (Ill. 2005) ("the question of whether laws of different states apply to specific transactions alleged in a class action does not ordinarily prevent certification of the class").

23                [19] If the Court finds it cannot apply California law to a nationwide class, the Court should permit
      Plaintiffs to amend their Complaint to allege claims against ATI Technologies, Inc. under the Ontario
24    Consumer Protection Act, 2002, S.O. 2002, c. 30, Sch. A ("Ontario CPA"). Application of the Ontario CPA
      would moot Defendants' arguments against class certification: the Ontario CPA applies equally to all class
25    members, and Ontario CPA claims do not require establishment of individual reliance (indeed, the Ontario
      CPA reflects an explicit policy to provide consumers a class remedy).

26                [20] *See also Vasquez*, 4 Cal. 3d at 815, 484 P.2d at 973 (noting that federal securities cases
      "in which stockholders have alleged fraud on the basis of printed misrepresentations in a
27    corporation prospectus hold that individual proof may not be required to establish reliance by each
      stockholder").

28

for treatment in a class action"). *Cf.* Fed. R. Evid. 406 ("Evidence of . . . the routine practice of an organization . . . is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice"). Here, Plaintiffs allege that ATI marketed its graphics cards with two uniform expressions: "HDCP ready" or "HDCP compliant." (Pl.s' Consolidated Compl. ¶ 35.) *Vasquez* does not require Plaintiffs to show that HDCP capability was the only reason class members purchased the cards. "[A] misrepresentation may be the basis of fraud if it was a substantial factor in inducing the plaintiff to act and that it need not be the sole cause of damage." *Id.*, 4 Cal.3d at 814 n.9, 484 P.2d at 973 n.9. To take advantage of the *Vasquez* inference, Plaintiffs need only show that HDCP capability was a substantial factor in inducing class members to purchase ATI's graphics cards.

## A.   Defendants' Attempts to Distinguish *Vasquez* Are Unavailing

Defendants attempt to evade *Vasquez* in two ways. First, Defendants allege that HDCP capability "was so obscure and had so little current use that no more than 10-20% of the members of plaintiffs' proposed class even cared whether the graphics card they purchased was 'HDCP-ready.'" Def.s' Opp. 20 *citing* Cai. Decl. ¶¶ 5, 24. Defendants may protest, but their own witnesses and employees have testified to the materiality of HDCP capability (even if the testimony was through gritted teeth).[21]   *Cf. Chamberlan v. Ford Motor Co.*, 369 F. Supp. 2d 1138, 1145 (N.D. Cal. 2005) (materiality sufficient for classwide inference of reliance established with testimony that "typical vehicle owner would not expect [defective] part to fail," and that high cost of replacing the part, and the risk of additional damage posed). *Cf. Prata v. Superior Court*, 91 Cal.App.4th 1128, 1143, 111 Cal.Rptr.2d 296, 307 (2001) (although misrepresentations were through 19 different ads to some 300,000 consumers, "there is no need to examine each consumer transaction to establish a

---

[21] Michael Cai later testified during his deposition that "[a]mong those persons who are familiar with the term 'HDCP,' . . . 70 percent of them believe it was important." Parisi Decl., Ex. 8, Cai Dep., 115:1-6. Likewise, ATI's Director of North American Channel Sales testified that a reseller "selling to a high-end client . . . would like [their clients] to know [the resellers' graphics card would] support HD playback," that consumers want the ability to play Blu-Ray and HD DVD discs, and that "high-end" consumers in 2005 would be interested in buying a graphics card that could play the next generation of digital media." Parisi Decl., Ex. 2, McIntosh Dep., 135:22-136:2; 139:7-139:8; 140:7-140:15; 142:4-142:10. All of these features hinge on a graphics card's HDCP capability. Pl.s' Consolidated Compl. ¶ 33.

1   [UCL violation]. The issue is, instead, whether the program as a whole was likely to mislead").

2        Defendants next state that the *Vasquez* inference of reliance fails because "there was no

3   standardized representation conveyed to all class members." Def.s' Opp. 20. Defendants' argument

4   is particularly galling, because they stipulated the advertising and specifications for the graphics

5   cards indicated the cards were "HDCP ready," "HDCP capable" or "HDCP compliant."[22]

6   Nevertheless, the issue is immaterial because reliance can be established even without proving a

7   class member "saw or heard any specific misrepresentations of fact . . . or that [they] heard them

8   directly from defendants or their agents. It was sufficient that the statements were issued to the

9   public with the intent that they reach[ed graphics card purchasers] and that [the class members], as

10  a member of the intended target population, heard [the misrepresentations.]" *Whiteley v. Philip*

11  *Morris, Inc.*, 117 Cal.App.4th 635, 680-81, 11 Cal.Rptr.3d 807, 845 (2004).[23]

12       **B.      Proposition 64 Does Not Require Every Class Member to Prove Reliance**

13       Defendants' remaining argument as to reliance is that Proposition 64 altered the UCL, so

14  that class actions must prove reliance by every class member. Def.s' Opp. 19-20. Actually,

15  Proposition 64 only amended the UCL to restrict standing for plaintiffs to persons who had

16  "suffered injury in fact and has lost money or property as a result of" unfair competition could bring

17

18       [22] 1. Whether ATI stated in advertising that graphics cards
19       manufactured or sold by ATI were "HDCP ready," "HDCP capable"
         or "HDCP compliant" is a fact that can be established by proof
20       common to the class.
              2. Whether any specification published by ATI for its graphics
21       cards stated that any such card manufactured or sold by ATI was
         "HDCP ready," "HDCP capable" or "HDCP compliant" is a fact that
22       can be established by proof common to the class.
    Parisi Decl., Ex. 4, p. 21.  Indeed, Defendants' counsel represented to the court that the parties
23  stipulated that Defendants conceded this issue and no discovery could be taken on ATI's
    representations to the class members.  Parisi Decl., Ex. 1, Sahjpaul Dep., 97:13-98:1; 99:5-11;
24  100:5-6.

25       [23] *See also Boeken v. Philip Morris, Inc.*, 127 Cal.App.4th 1640, 1660-1663, 26 Cal.Rptr.3d
    638, 653-656 (2005); *Restatement of Torts, Second*, § 533 (1977) ("The maker of a fraudulent
26  misrepresentation is subject to liability for pecuniary loss to another who acts in justifiable reliance
    upon it if the misrepresentation, although not made directly to the other, is made to a third person
27  and the maker intends or has reason to expect that its terms will be repeated or its substance
    communicated to the other, and that it will influence his conduct in the transaction or type of
28  transaction involved.")

suit.[24] Defendants' own authorities are entirely consistent with this modest goal -- they merely require the class representative to demonstrate their own reliance -- and do not breathe even a word that the UCL requires proof of reliance by absent class members.[25] As Defendants note, *Anunziato v. eMachines, Inc.*, 402 F.Supp.2d 1133 (C.D. Cal. 2005) holds that Proposition 64 now requires damages, but not reliance.[26]  Given the limited intent of Proposition 64, *Anunziato* is the more persuasive case, but that too is not material because Defendants' assumption that "Proposition 64's standing requirements apply . . . to the proposed class members" is wrong. Def.s' Opp. 19. Although Defendants argue strenuously that class representative and class member must be in the precise same situation, Rule 23 provides litigants far more flexibility than Defendants allow. Rule 23's typicality element can stretch over even serious standing issues. *See Gratz v. Bollinger*, 539 U.S. 244, 262-68 (2003) (class representative denied undergraduate admission as freshman could represent class of applicants denied undergraduate admission as transfers; use of race in transfer admissions [did] not "implicate a significantly different set of concerns" than use of race in freshman admissions); *Hicks v. Morgan Stanley & Co.*, No. 01-10071, 2003 U.S. Dist. LEXIS 11972, at *23 (S.D.N.Y. July 16, 2003) (following *Gratz*, typicality requirement in Rule 23(a)(3)

---

[24] Proposition 64 was only intended to "prohibit private attorneys from filing lawsuits for unfair competition where they have no client who has been injured in fact under the standing requirements of the United States Constitution" and to "to eliminate frivolous unfair competition lawsuits while protecting the right of individuals to retain an attorney and file an action for relief" under to the UCL and the FAL. Prop. 64 § 1(d), (e) (emphasis added).  Proposition 64 "left entirely unchanged the substantive rules governing business and competitive conduct" and did not "eliminate any right to recover."  *Californians for Disability Rights v. Mervyn's, LLC*, 39 Cal.4th 223, 232, 138 P.3d 207, 212 (2006).

[25] *Cattie v. Wal-Mart Stores, Inc.*, NO. 06-0897, 2007 U.S. Dist. LEXIS 19980, at *18-19, 22 (S.D. Cal. Mar. 21, 2007) (plaintiff could not state claim under post-Proposition 64 UCL with "nothing more than a token purchase" and no allegation of reliance); *Laster v. T-Mobile United States, Inc.*, 407 F.Supp.2d 1181, 1194 (C.D. Cal. 2005) (plaintiffs' UCL claims failed in without alleging personal reliance).

[26]  The Court in *Anunziato* explained as follows:

> The goal of consumer protection is not advanced by eliminating large segments of the public from coverage under the UCL or the FAL . . . merely because they were inattentive . . .  A construction of these statutes that reduced them to common law fraud would not only be redundant, but would eviscerate any purpose that the UCL and the FAL have independent of common law fraud.

*Anunziato*, 402 F.Supp.2d at 1137-38.

1   sufficiently flexible that class representation with section 12 Securities Act claim could represent

2   class of section 11 claimants).

3   **V.   DEFENDANTS' SPOILATION / ADEQUACY ARGUMENTS ARE MERITLESS.**

4   Defendants make a feeble stab at the class members' adequacy. Defendants simply do not

5   raise the kind of issues that would cause the Ninth Circuit to view the Plaintiffs as

6   inadequate. Defendants claim that the Plaintiffs are inadequate and atypical class representatives

7   because, principally, they have indistinct memories of their exposure to Defendants' HDCP-related

8   marketing. Def.s' Opp. 34-35. As discussed above, reliance can be shown without reference to

9   "specific misrepresentations" where Defendants intended to target Plaintiffs and the other class

10  members with HDCP-related misrepresentations. Plaintiffs' indistinct recollection falls well below

11  the threshold of inadequacy articulated in *Surowitz v. Hilton Hotels*, 383 U.S. 363, 372-74 (1966)

12  ("threshold of knowledge required to qualify a class representative is low" and "will be deemed

13  inadequate only if she is "startlingly unfamiliar" with the case"); *Moeller v. Taco Bell Corp.*, 220

14  F.R.D. 604, 612 (N.D. Cal. 2004). *See also Thomas & Thomas Rodmakers, Inc. v. Newport*

15  *Adhesives & Composites, Inc.*, 209 F.R.D. 159, 165 (C.D. Cal. 2002) ("plaintiffs have at least a

16  rudimentary understanding of the nature of the present action and they have a demonstrated

17  willingness to assist counsel in the prosecution of the litigation").

18  Nothing more is required of the Plaintiffs. As discussed above, reliance can be shown

19  without reference to "specific misrepresentations" where Defendants intended to target Plaintiffs

20  and the other class members with HDCP-related misrepresentations.  *Whiteley*, 117 Cal.App.4[th] at

21  680-81, 11 Cal. Rptr.3d at 845. The relative importance of Defendants' misrepresentations vastly

22  exceeds the issue whether one of the Plaintiffs deleted some emails related to HDCP.  "The test of

23  typicality is whether other members have the same or similar injury, whether the action is based on

24  conduct which is not unique to the named plaintiffs, and whether other class members have been

25  injured by the same course of conduct." *Hanon, supra,* 976 F.2d at 508 (9th Cir. 1992). The focus

26  in this litigation is inevitably on Defendants and their misrepresentations. Both named Plaintiffs

27  more than meet the adequacy requirements of Fed. R. Civ. P. 23(a).

28

1  **VI.    CONCLUSION**

2        For the foregoing reasons, plaintiff respectfully requests that this Court certify this action as

3  a class action under Rules 23(b)(2) and/or 23(b)(3), certify the Plaintiffs as the class

4  representatives, and appoint KAMBER & ASSOCIATES, LLC and PARISI & HAVENS LLP as

5  co-counsel for the class.

6
   DATED: April 23, 2007                              PARISI & HAVENS LLP
7

8

9                                                     By:_____/S/_____
                                                          David C. Parisi
10                                                    15233 Valleyheart Drive
                                                      Sherman Oaks, California  91403
11                                                    (818) 990-1299 (phone)
                                                      (818) 501-7852 (facsimile)
12                                                    dcparisi@parisihavens.com

13                                                    KAMBER & ASSOCIATES, LLC
14                                                    Scott A. Kamber
                                                      Ethan Preston
15                                                    11 Broadway, 22nd Floor
                                                      New York, New York   10004
16                                                    (212) 920-3072 (phone)
                                                      (212) 202-6364 (facsimile)
17                                                    skamber@kolaw.com

18
                                                      Proposed Co-Lead Counsel for the Putative
19                                                    Class

20
                                                      Alan Himmelfarb (SBN 90480)
21                                                    LAW OFFICES OF ALAN HIMMELFARB
                                                      2757 Leonis Boulevard
22                                                    Los Angeles, California  90058
                                                      (323) 585-8696 (phone)
23

24                                                    Joshua H. Haffner (SBN 188652)
                                                      LAW OFFICES OF JOSHUA H. HAFFNER
25                                                    333 Washington Blvd., Suite 354
                                                      Marina Del Rey, California  90292
26                                                    (310) 305-3975 (phone)

27
                                                      B.J. Wade
28                                                    GLASSMAN, EDWARDS, WADE &

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

WYATT, P.C.
26 N. Second Street
Memphis, Tennessee  38103
(901) 527-4673 (phone)

Gary Mason
THE MASON LAW FIRM, P.C.
1225 19th Street Northwest
Washington, D.C.  20036
(202) 429-2290 (phone)

Alexander E. Barnett
THE MASON LAW FIRM, P.C.
One Pennsylvania Plaza, Suite 4632
New York, NY  10119
(212) 362-5770 (phone)